Judge Hitohoock
delivered the opinion of the court:
These cases are of great importance, on account of the principles involved, and have been argued by counsel with the ingenuity and ability which the importance of those principles demands. It must be admitted, too, that the cases are of that description where there is danger that a court, from its earnest desire to do justice, may be led astray upon points of law,' notwithstanding all its anxiety to the contrary. For it is certain that if the defense be legal, it is manifestly unjust, and such a defense as no court would sustain unless impelled to it by some well-settled and unbending principle of law. The corporation of Chillieothe have borrowed the money, for the recovery of which these suits are brought. In one instance it was done in pursuance of a vote of the people of the town constituting the corporation. This money has been used, as we are bound to believe, for the interest of the •town ; and non-payment is resisted, upon the ground that this same corporation had not the power to borrow the money, and that in *324 doing so, they violated their charter. The language of the defendants to the plaintiffs is in substance this : True, you loaned to us this money, you did it at our earnest solicitation, we have used it for our own benefit; but we have no power to borrow, we violated our charter in so doing, and we will take advantage of this *our own wrongful act, to protect ourselves from the paynaent of that which is your honest due. No. rule of decision which will lead to such manifest injustice ought to be adopted without careful examination and much deliberation.
These cases, as now presented, are believed to be of the first impression, as counsel, with all their research, have not been able to produce a decision in point. As between natural persons, it is true that inability to contract constitutes a defense. Hence the pleas of infancy and coverture are sometimes interposed to avoid the payment of a debt which an honest man or woman might be desirous to discharge. And such pleas are formed in law, not so much on account of their abstract justice, as from considerations of general policy. But although corporations have existed for centuries, still we have found no case in which inability to contract has been set up to avoid the payment of their debts. There are, it is true, many cases where the powers of particular corporations have been investigated, and where they have been held to have exercised power not granted to them, in consequence of which their acts were void; but these have been cases where the corporations themselves have been striving to set up or enforce powers, not where they have set up as a defense that they themselves had been guilty of a usurpation of power. Such are cases against individuals charged with trespasses or other misfeasances, and where the defense is, that they acted in pursuance of powers delegated to them by corporations. Such was the case of Colter v. Coty, 5 Ohio, 393, relied upon as an authority for the plaintiff. It was an action for replevin for fifty kegs of gunpowder, and the defendant justified under the plea that he was marshal of the city of Cincinnati, and that he retained the gunpowder under an order of the corporation, because it had been forfeited for a violation ofa city ordinance. The court held that the corporation had no power to create a forfeiture, and, therefore, that the defendant was not justified. To have assimilated that case to this, it should have been against the corporation itself, and the corporation should have relied upon the defense that they were exonerated,. *325 because, in the creation of the forfeiture, they had been guilty of usurpation.
■As a general principle, no corporation can exercise powers not-granted in its act of incorporation. This act is its constitution, and whenever it oversteps the limits therein prescribed, *its act so far becomes void. But where certain powers are specifically granted, these carry with them such others,, as incidental thereto, as are necessary to carry those specified into effect. It is proper, too, that these powers should be strictly construed, considering-with how little care chartered privileges are in these days granted. 2 Kent’s Com., 2 ed. 298, 299; 2 Cranch, 127; 4 Wheat. 636; 4 Pet. U. S. 152. But a different rule of construction ought to prevail where a corporation is endeavoring to extend its power to the injury of others, and where it sets up, by way of defense to an action brought against it, that it has itself been guilty of usurpation of power.
In considering this case, it is not my purpose to enter minutely into the arguments of counsel, although there are some principles-advanced for defendants in the opening argument, in-whieh I can not fully concur. In justice to counsel, I will say that this argument evinces much thought and reflection, and as a political production is worthy of great consideration. It seems to me, however, that it might have been better addressed tp the mayor and commonalty of Chillicothe, and to the people of that town, to-dissuade them from contracting their debts, than to this court, to induce us to lend our aid to the corporation in avoiding their payment.
It is said “ that the delegated power to borrow money is in its-nature a high, independent, substantive sovereign power, and can, therefore, in no instance pass from its primitive source but by express grant."
I do not know that I fully comprehend what is intended by this proposition; according to my understanding, it amounts to this: the power to borrow money being a high, substantive, independent sovereign power, has its source with the people, who are the primitive-source of all power, and must remain there until expressly granted. If this be true, it must follow that the corporation of Chillicothe have not power to borrow money, and could not have had, had it. been expressly granted in the act of incorporation, and for the reason that the people have not delegated in the constitution this- *326 power to the general assembly — and no one will pretend that this body can confer upon a municipal corporation a power which it. does not itself possess. Upon this principle debts contracted by the general assembly, for money borrowed, are not binding *npon the state; I am not prepared to admit this question ; it goes at once to destroy all confidence in the public faith.
This is not the doctrine, however, which the counsel intends to-advocate. He supposes this power is expressly given to the general assembly, because, as he says, it' “ is among the sovereign powers of legislation,” and all legislative power is expressly given, in the first article of the constitution, to the general assembly.” That the general assembly have the’ power to borrow money, I have no doubt, and I agree with counsel that this power is conferred by the grant of all legislative power. The only difference between us is in the nature of the power. He considers it as a substantive, independent, legislative power. I consider it as incidental, general legislative power. It is not of that “high, independent, substantive, sovereign” character contended for. This power, resting jn the general assembly, may be granted by that body to a municipal corporation, either expressly, or as it possesses it itself, incidentally or by implication.
That this power is not expressly granted to the corporation of Chillieothe is admitted, and the only question is, whether it is. granted by implication. In order to arrive at a correct conclusion, it is necessary to examine the act of incorporation. The original act was -passed on December 28, 1813. In section 1 the limits of the town are specified, and the same is erected into a town corporate by the name of Chillieothe. Section 2 provides for .the election of officers, and section, 3, that the mayor, recorder, treasurer, and common eouncilmen, elected in pursuance of section .2, and their successors in office, shall be a body corporate by the name of the “ mayor and commonalty of the town of Ohillicothe,” with capacity “ to purchase, receive, possess, and convey any real or personal estate for the use of said town of Chillieothe; provided the clear annual income shall not exceed four thousand, dollars.”
In section 5, power is given “to lay a tax within said town,” for the purposes, and to bq assessed in the manner in the act. specified.
In section 6, power is given “to erect and repair pubiic build-. *327 ings for the-benefit of said town, and make and publish laws and ordinances in writing, and the same from time to time alter and repeal, as to them shall seem necessary, for the ^internal safety and convenience of said town of Ohillicothe and the inhabitants thereof.”
From these extracts it will be seen that this corporation, as by that law constituted, had legislative power; this power, it is true, was restricted to such objects as should seem necessary for the internal safety and convenience of said town of Ohillicothe, and restricted, too, so far that the laws made and published, should not be contrary to the laws of the state or of the United States. It had the power further, “ to purchase, receive, possess, and convey any real or personal estate for the use of the town, to erect and repair public buildings for the benefit of said town,” etc.
If the power to borrow money be, as is insisted by counsel, a substantial legislative power, or, according to my apprehension of the subject, an incident to legislative power, and, if it became necessary, for the safety and convenience of the town, or to carry into effect the power granted to purchase real or personal estate, -or to erect or repair public buildings, to borrow money, there ■could be no objection to passing a law or ordinance to that effect. When passed, it would be obligatory on the corporation, and the money procured would constitute a debt which the corporation must discharge. Such law would contravene no principle of the constitution or laws of the state or of the United States, or any principle contained in the charter of incorporation. To effect •Other subjects than those specified in the charter, money could not, with propriety, be borrowed. But if it should be, that circumstance could hardly be set up as a matter of defense against an action brought for the recovery of the money. It would rather be a question between the individual corporation and their officers, or it might be between the state and the corporation.
This act of December 28, 1813, was amended by an act passed -on February 4, 1825. Although, by this amendatory law, all parts of the original law within its purview were repealed, it added to, rather than diminished the power of the corporation. Like the former law, it conferred power on the corporation to lay a tax, which might be increased to any extent by a vote of the freeholders and householders of the town at an annual election. It also conferred upon the mayor and common council the “ power to pass *328 and publish all such laws and ordinances as to them shall appear necessary for regulating the streets, alleys, and highways, and for cleansing, praising, draining, paving, turnpiking, or otherwise keeping the same in repair,” and also, “ to pass all such laws and ordinances relative to the good government of the town,” etc. If, in affecting any of these objects, it became necessary to borrow money, the corporation might, with propriety, do it. In one of the cases now before the court, the money was borrowed expressly for improving one of the streets.
For the purpose of purchasing real estate, erecting and repairing.public buildings, cleansing, raising, paving, draining, turnpiking and otherwise keeping streets in repair, contracts must necessarily be made. Ultimate payment, it is true, must be made from taxation. But until money, could be thus raised, it seems, to the court that it might be provided otherwise, and in no way better than by borrowing. And really I can not see the. great difference whether a corporation shall be indebted to A. for labor in repairing streets or buildings; or to B. for money borrowed to pay A. for this same labor. The moral obligation to pay would bo the same in either case.
In the cases now before the court, there is nothing illegal in the consideration, and there is no violation of any positive law or moral principle in the premises. The undertakings are not to do an illegal act, but to refund money actually borrowed. The plaintiff violated no principle of law in loaning the money, and certainly there would be nothing immoral in the defendants’ paying it. On the contrary, we think its payment is required by every principle of moral honesty, and prohibited by no arbitrary rule of law.
The demurrers to the declarations will be overruled, and judgment rendered for the plaintiffs.